Brower v. Witmeyer et al.

No. 13,672.

BROWER v. WITMEYER ET AL.

MORTGAGE.—Registry Law.—Purchase-Money.—Priority.—Rights of Assignee. —Notice.—A purchase-money mortgage executed to the vendors of land, through neglect of the justice of the peace with whom it was entrusted, was not recorded till after the recording of a junior mortgage executed by the vendee to secure a note given for money already obtained to make the cash payment on the land;

Held, in an action by the assignee of the junior mortgage, who had taken the assignment of the mortgage after the purchase-money mortgage was recorded, and from one chargeable with notice, that the assignee was himself chargeable with the notice of its existence; and that it was his duty to ascertain from the records the condition of the title at the time he acquired his mortgage.

SAME.—Mortgage to Secure Cash Payment.—Agreement to Execute.—Rights of Vendor.—An agreement by one who intends to buy land to execute a mortgage to one from whom he borrows money will not prejudice the rights of the vendors under a mortgage executed to secure the unpaid purchase-money.

SAME.—Money Advanced to Buy Land.—Subrogation.—Vendor's Lien.—One who advances money to buy land is not entitled to be subrogated to the rights of the vendor where it would result in defeating the vendor's lien for the unpaid purchase-money.

From the Cass Circuit Court.

R. Magee and G. W. Funk, for appellant.

D. H. Chase, for appellees.

ELLIOTT, C. J.—The appellees, Sarah Decker, Elizabeth McHenry, Lydia Woodhouse and Thankful McHenry, were the owners and in possession of the real estate in controversy on the 1st day of February, 1881, and had been the owners for a long time prior to that date. Witmeyer, another of the appellees, desired to buy the land, and the terms of sale were agreed upon by him and the owners of the land. He did not have the money to make the cash payment, and he borrowed it from George Brower. After Witmeyer ob-

tained the money he met the appellees at the office of Robert McKee, a justice of the peace, on the 1st day of February, 1881, and a deed was executed to him for the land, and a mortgage to the grantors for the purchase-money was executed by him. When this was done Witmeyer executed a mortgage to George Brower for the money borrowed of him. McKee was entrusted with the mortgage for the purchase-money, but, by neglect on his part, it was not recorded until the 1st day of November, 1881, which was long after the mortgage to George Brower was recorded. The appellant became the owner of the latter mortgage by assignment on the 12th day of November, 1883.

The note executed to George Brower by Witmeyer was not negotiable by the law merchant, and the case is, therefore, not affected by any question as to the rights of a *bona fide* endorsee of commercial paper.

The appellant's assignor knew, as is fairly inferable from the evidence, that the mortgage to the vendors of the land was executed to secure the purchase-money, and knew, also, before he loaned the money to Witmeyer that it was borrowed for the purpose of making the cash payment, so that if he had remained the owner of the note there could be no possible doubt as to which of the two mortgages has priority.

This case can not be disposed of by the application of the rules which obtain where the controversy is confined to the mortgagor and mortgagee, as appellant's counsel assume, for here the rights of the vendors of the land intervene, and their high equities can not be disregarded. If it be conceded that Witmeyer, at the time he obtained the loan, agreed with George Brower to execute a mortgage to him, that agreement could not affect the rights of the vendors who were then the owners of the land. It is quite clear that an agreement by one who intends to buy land to execute a mortgage to one from whom he borrows money can not prejudice the rights of the vendors under a mortgage executed to secure the unpaid purchase-money. As against them it is

perfectly clear that no mortgage could be effective, even if fully executed, until after they had parted with title, and as they took a mortgage at the time of parting with title it is impossible that any mortgage could creep in and destroy the priority of their lien. *Turk* v. *Funk*, 68 Mo. 18. While equity might, as between mortgagor and mortgagee, compel the former to execute a mortgage as of the date agreed upon, it will not do so where the effort of the mortgagee is to defeat the lien of the vendors for the purchase-money of the land.

The rule declared in such cases as *Jones* v. *Parker*, 51 Wis. 218, *Carey* v. *Boyle*, 53 Wis. 574, *Dwenger* v. *Branigan*, 95 Ind. 221, *Fleece* v. *O'Rear*, 83 Ind. 200, and *Johns* v *Sewell*, 33 Ind. 1, can not be given effect in such a case as this. Where money is advanced to buy land the party advancing it may, in some instances, be entitled to be subrogated to the rights of the vendor, but this can never be so where it would result in defeating the vendor's lien for the unpaid purchase-money. 1 Jones Mort. (4th ed.), section 464.

The lien of a vendor for unpaid purchase-money is favored by the courts; it is an equity which the courts will protect against all persons except such as occupy the position of a *bona fide* purchaser. The appellant's assignor did not occupy that position, for the note was executed for an antecedent debt. *Busenbarke* v. *Ramey*, 53 Ind. 499. If the appellant occupies no better position than his assignor, then, of course, he must fail, but he does occupy a better position, for he bought the note and paid value for it. An assignee who buys and pays full value for a note and mortgage is protected by the record against equities and liens of which he had no actual or constructive notice. *Jackson* v. *Reid*, 30 Kan. 10; *Mott* v. *Clark*, 9 Pa. St. 399; *Trull* v. *Bigelow*, 16 Mass. 406; *Somes* v. *Brewer*, 2 Pick. 184. If he had bought the mortgage before that of the appellees was recorded, his mortgage would probably be entitled to priority, but he did

not buy until several years after the appellees' mortgage was recorded. When he did purchase, there was of record a mortgage, and the question is, what is the effect of that mortgage upon his rights? for he is not in the position of one who buys where there is no recorded mortgage at all. It is well settled that a mortgagee is not required to examine the record after the recording of his mortgage to ascertain what other liens have been placed upon the land, except for the purpose of a foreclosure suit. *Iglehart* v. *Crane,* 42 Ill. 261 ; *Heaton* v. *Prather,* 84 Ill. 330 ; *Cooper* v. *Bigly,* 13 Mich. 463 ; *Howard Ins. Co.* v. *Hasley,* 8 N. Y. 271 ; *Straight* v. *Harris,* 14 Wis. 555 ; *Vanorden* v. *Johnson,* 14 N. J. Eq. 376 ; *Brown* v. *Simons,* 44 N. H. 475 ; *Birnie* v. *Main,* 29 Ark. 591. But this rule can not control here, for the appellant's assignor was chargeable with actual notice, and he was not a *bona fide* mortgagee as against the purchase-money mortgage, nor did the appellant become the holder of the mortgage until after the purchase-money mortgage had been recorded. Our judgment is that, as he took the assignment of the mortgage after the purchase-money mortgage was recorded, and from one chargeable with notice, he was himself chargeable with notice of its existence. It was his duty to ascertain from the records the condition of the title at the time he acquired his mortgage. *Gilchrist* v. *Gough,* 63 Ind. 576 ; *Brannon* v. *May,* 42 Ind. 92 ; *Trisler* v. *Trisler,* 38 Ind. 282 ; *Runyan* v. *McClellan,* 24 Ind. 165 ; *Meni* v. *Rathbone,* 21 Ind. 454; *Decker* v. *Boice,* 83 N. Y. 215. As the record imparted notice of the purchase-money mortgage the assignee was chargeable with notice of all the facts which a reasonable inquiry would have revealed. The notice conveyed by the record was sufficient to impose upon the appellant the duty of ascertaining the facts respecting the mortgage which he found of record. *Jackson* v. *Post,* 15 Wend. 588 ; *Van Rensselaer* v. *Clark,* 17 Wend. 25 (31 Am. Dec. 280). That mortgage, it is true, bore the

same date as the one he bought, but the date alone did not determine the question of priority.

Judgment affirmed.

Filed Nov. 9, 1889.